# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

GMRI, INC.,
    Plaintiff,

v.

VALERIE SWINSON,
    Defendant.

No. 3:18-cv-1570 (SRU)

## ORDER

Valerie Swinson ("Swinson") is a former employee of GMRI, Inc. ("GMRI"), which does business as LongHorn Steakhouse. Swinson was employed at the LongHorn in Manchester, Connecticut. Compl., Doc. No. 1, at ¶ 6. In late 2015, LongHorn terminated Swinson because, according to LongHorn, Swinson had complained to management about having to serve certain customers because of their race. *Id.* at ¶ 8. In late 2016, Swinson took GMRI to arbitration. *Id.* at ¶ 9. In August 2018, after a hearing focused only on liability and not damages, the arbitrator handed down a liability award partly in favor of Swinson. In September 2018, GMRI filed a complaint seeking to vacate the arbitration award. *See* Compl, Doc. No. 1. In April 2019, the parties tried—and failed—to settle this dispute. *See* Min. Entry, Doc. No. 20. In August 2019, Swinson filed a motion to confirm the arbitrator's award. *See* Mot. to Confirm, Doc. No. 23. Most recently, before setting a briefing schedule, I held a status conference and allowed limited discovery into two topics. Before discovery closed, the parties filed numerous motions to compel responses and enforce subpoenas. This order deals with those motions.

### I. Standard of Review

    A. <u>Reviewing Arbitration Awards</u>

Although this is a discovery dispute, the standard for vacating an arbitral award is relevant. A district court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a). In general, arbitrators' decisions are entitled "to a high degree of deference." *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31 (2d Cir. 1997). With respect to an arbitrator's purported partiality, "[a]n arbitral award can be vacated on this ground when 'a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Hagan v. Katz Comms., Inc.*, 200 F. Supp. 3d 435, 446 (S.D.N.Y. 2016) (quoting *Nat'l Football League Mgmt. Council v. Nat'l Football League Players' Ass'n*, 820 F.3d 527, 548 (2d Cir. 2016)).

"Procedural rulings can only lead to vacating an award if the ruling denied the petitioner 'fundamental fairness.'" *Landmark Ventures, Inc. v. InSightec, Ltd.*, 63 F. Supp. 3d 343, 352 (S.D.N.Y. 2014) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir. 2013)). An arbitrator must give each party "an adequate opportunity to present its evidence and argument" but arbitrators "have substantial discretion to admit or exclude evidence" and "to limit discovery." *Id.*

B. Discovery

Normally, parties are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R.

2

Civ. P. 26(b)(1). "'The party resisting discovery bears the burden of showing why discovery should be denied.'" *Bernstein v. Mafcote, Inc.*, 2014 WL 3579522, at *1 (D. Conn. July 21, 2014) (quoting *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009)).

If a subpoena "commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). "Parties desiring access to information produced in response to the subpoena will need to follow up with the party serving it or the person served to obtain such access." Fed. R. Civ. P. 45(a) advisory committee's note to 2013 amendment. "The rule does not limit the court's authority to order notice of receipt of produced materials or access to them. The party serving the subpoena should in any event make reasonable provision for prompt access." *Id.*

C. Privileges

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *Bernstein*, 2014 WL 3579522, at *6 (citing *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). The work product doctrine "'protects documents created by counsel or per counsel's directive in anticipation of litigation.'" *See id.* at *7 (quoting *Koumoulis v. Indep. Fin. Mktg. Grp., Inc.*, 295 F.R.D. 28, 39 (E.D.N.Y. 2013)). With respect to both privileges, the party asserting the privilege "bears the heavy burden of establishing its applicability." *See Koumoulis*, 295 F.R.D. at 39 (citing *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (internal quotations omitted)).

When a person withholds subpoenaed information "under a claim that it is privileged or subject to protection as trial-preparation material," that party must both expressly make that

3

claim and provide a "privilege log," which must "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). However, under Local Rule of Civil Procedure 26(e), a party need not prepare a privilege log for "written or electronic communications between a party and its trial counsel after commencement of the action and the work product material created after commencement of the action." D. Conn. L. Civ. R. 26(e).

**II.     Background**

On December 28, 2016, Swinson filed a demand for arbitration with the American Arbitration Association ("AAA") regarding her firing. Compl., Doc. No. 1, at ¶ 9. On February 27, 2017, the AAA appointed Joseph Garrison ("Garrison") of the law firm Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C. (the "Garrison Firm") to serve as arbitrator. *Id.* at ¶ 10. On the same day, the parties were provided with a Notice of Appointment form that Garrison had filled out and e-signed. *See* Notice of Appointment, Ex. A to Compl., Doc. No. 1-1.

The Notice of Appointment instructed Garrison that he was obligated to disclose "any past or present relationship with the parties, their counsel, or potential witnesses, direct or indirect, whether financial, professional, social or of any other kind." *Id.* The Notice of Appointment continued: "If you are aware of direct or indirect contact with such individuals, please describe it below." *Id.* The Notice of Appointment proceeded to ask, among other questions, whether Garrison had "had any professional or social relationships with counsel for any party in this proceeding or the firms for which they work?" *Id.* Garrison answered "yes" and wrote:

> In the course of my legal career, I have had numerous professional engagements with Littler Mendelson ["Littler"], when they have acted as

> defense counsel. I have acted as a mediator for that firm on at least 2
> occasions. Through my membership in employment law organizations, I
> know the lawyers for the claimant. I have also acted as a mediator in at
> least one case for that firm. I do not know the claimant, nor do I know
> anything about the defendant as an organization.

*Id.* Littler is GMRI's counsel in this matter. The lawyers for the claimant—Swinson—were from the firm Hayber, McKenna & Dinsmore, LLC ("Hayber"). Garrison answered "No" to all other questions on the Notice of Appointment questionnaire and attested that he had "diligently conducted a conflicts check." *Id.* Neither party objected to Garrison's being appointed arbitrator, and Garrison was appointed on March 6, 2017. Compl, Doc. No. 1, at ¶¶ 21, 24.

Although the arbitration hearing was initially set for three days in October 2017, Swinson began to experience medical issues, and discovery in the case was stayed. *See id.* at ¶ 27. In early December 2017, Swinson's health took a turn for the worse, and she entered hospice care. *See* Swinson's Obj., Doc. No. 36, at 2. Swinson's doctors thought she might not survive until Christmas. *See id.* Because discovery was stayed, Hayber moved for an emergency lift of the stay and permission to conduct a preservation deposition of Swinson. The deposition went forward over GMRI's objection on either December 17th or 18th, 2017. That day, Hayber completed Swinson's direct examination; GMRI began its cross-examination but stopped and planned to resume the following day. Compl., Doc. No. 1, at ¶ 37.

That night, Swinson's health deteriorated, and she was unable to complete her deposition the following day. *Id.* at ¶ 38. On December 19, the parties held a status conference with Garrison about Swinson's condition and deposition. *Id.* at ¶ 39. Sometime in January or February, Swinson provided GMRI with over 500 pages of her medical records. *See* Swinson's Obj., Doc. No. 36, at 4. In addition, Swinson provided a note[1] dated January 29, 2018 from

---

[1] It is not clear when exactly that note was provided to Garrison, although Garrison had seen it (and relied on it) by, at the latest, May 18, 2018. *See* Email, Attach. 5 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 15.

Marie Banevicius—Swinson's nurse at Intercommunity Primary Care—that indicated Swinson was "currently in heart failure related to cardiomyopathy," "now on hospice care," and home bound. Letter, Attach. 2 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 9.

At a status conference on March 23, 2018, Garrison denied GMRI's request to complete Swinson's cross-examination. *See* Compl., Doc. No. 1, at ¶ 44. The hearing was continued until May 30, 2018. Before then, on April 18, 2018, Garrison denied GMRI's motion to preclude Swinson's deposition testimony without prejudice to renewal. *See id.* at ¶¶ 47–48. On May 7, 2018, Garrison denied GMRI's motion to reconsider that ruling, but also ordered Swinson to produce a medical opinion regarding whether she could testify at the hearing and also whether Swinson was able to complete her deposition. *See id.* at ¶¶ 50–51. GMRI claims that on May 9, Swinson made a supplemental production of her medical records that indicated she was not as unhealthy as she claimed; GMRI raised that issue to Garrison on May 15. *See id.* at ¶¶ 52–54. On May 14, Swinson had obtained a second note from Marie Banevicius that reiterated Swinson was "currently in heart failure," was "now on hospice care," and "cannot proceed with any court appearances/proceedings or deposition hearings due to her critical medical complications." Letter, Attach. 3 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 11. Banevicius noted that "[t]his status was [e]ffective 12/2017." *Id.* And on May 16, Swinson provided a letter from Doctor Ross Albert[2] indicating that Swinson was "currently under the care of my hospice team, due to her end-stage congestive heart failure." Letter, Attach. 4 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 13. Dr. Albert further explained that he did "not believe that it would be feasible or safe for Mrs. Swinson to provide a deposition, even if this could be done in her own home." *Id.* On May 17, Garrison ruled:

---

[2] Dr. Albert was the chief of the division of palliative medicine at Hartford Hospital and Medical Director of Hartford Healthcare at Home Hospice. *See* Letter, Attach. 4 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 13.

6

> Dr. Al[b]ert's letter dated May 16, 2018 provides good and sufficient reason not to subject the Claimant to any further deposition process. It is clear from that letter that even if Claimant could survive a deposition without serious symptomology, any testimony she gave would be of virtually no value. Therefore I am adopting the findings of Dr. Al[b]ert and APRN Ban[e]vicius as my own findings of fact, and as a result discovery in this case is now closed. Respondent's request to continue Claimant's deposition is denied. The hearing, now restricted solely to liability, will begin on May 30.

Email, Attach. 5 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 15.

On May 23, 2018, GMRI renewed its motion to preclude Swinson's deposition testimony. *See* Compl., Doc. No. 1, at ¶ 58. On May 30, before the hearing began, Garrison denied GMRI's renewed motion. *Id.* at ¶ 60. The hearing lasted three days, through June 1, 2018. On June 1, at the end of the hearing, GMRI again raised the issue of Swinson's deposition testimony having been admitted; Garrison again asserted that he made his decision because "I haven't seen any opposing doctor or, you know, nurse's opinion that Ms. Swinson was in fact available to – or medically healthy enough to give a continuing deposition during the months" between December 18 and May 18. *See* Hr'g Tr., Attach. 7 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 22. Garrison confirmed that he had "the doctor[']s[] and the nurses' [notes] and they – they say – they have confirmed that [Swinson] was unavailable medically," but he left the hearing open for GMRI to submit evidence "that you were trying to take depositions on certain days and somehow actually were precluded, and that a reason was given that you say the medical records wouldn't confirm." *See id.* at 24. According to Swinson, GMRI never submitted such evidence. *See* Deborah McKenna Aff., Ex. A to Swinson's Obj., Doc. No. 36-1, at ¶ 12. Closing arguments were held in the arbitration hearing on June 18, and post-trial briefs were submitted on July 23. *See* Swinson's Obj., Doc. No. 36, at 5. On August 17, Garrison issued the arbitration award regarding liability. *See* Compl., Doc. No. 1, at ¶ 4.

7

At some point (when is a disputed fact), GMRI says that it became aware that the Garrison Firm and Hayber had served as co-counsel in a class action pending in federal court for the District of Connecticut both before and during the arbitration in this case. *See Williams, et al. v. General Nutrition Centers, Inc., et al.*, No. 3:14-cv-1429 (VLB) ("*GNC*"). On September 12, 2018, GMRI requested that Garrison supplement his disclosures to reflect that connection. *See* Compl., Doc. No. 1, at ¶ 23. And on September 17, 2018, GMRI moved to set aside the award in this case. *See* Compl., Doc. No. 1, at 1.

Garrison did supplement his disclosure, in relevant part, as follows:

> I have no substantive knowledge about the case of Williams v. GNC Corporation. I have not been involved in that case in any respect. I do not know if the case has merit, nor do I know anything about the fee arrangement (assuming there is one) between my law firm and the Hayber firm. I did make a conflict check by intra-firm email but I received no response from any of the attorneys. It has not been a factor at all and will not be a factor in any further proceedings.

Suppl. Disclosure, Attach. 6 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 17. Garrison has further explained that before he completed his Notice of Appointment form, he "would have done a conflicts check by internal office email," but cannot be certain because those kinds of emails are routinely deleted. *See* Garrison Aff., Ex. 1 to the Garrison Firm's Opp'n, Doc. No. 35-1, at ¶ 5. Garrison believes he "would have requested whether we had any conflict with the named parties, or any conflict with the named attorneys" and that there was no conflict. *See id.* Relatedly, Garrison learned that the Garrison Firm spent a total of one-half hour on the *GNC* case between December 12, 2016 and May 2, 2017. *See id.* at ¶ 6. Garrison also explained that the *GNC* case was settled with respect to liability on July 31, 2018, which was "the same day I finished the Award." *See id.* at ¶ 10. That is significant, Garrison explains, because the *GNC* settlement for liability did not include any amount for attorneys' fees, and no motion was made

8

for attorneys' fees until the end of August. *See id.* at ¶ 11. According to the *GNC* docket, attorneys' fees—in the amount of $187,750.00—were not awarded until November 29, 2018. *See* Order, *GNC*, No. 3:14-cv-1429 (VLB), Doc. No. 86.

On December 13, 2018, Swinson answered the complaint in this case. I held a telephonic status conference on March 21, 2019. *See* Min. Entry, Doc. No. 14. The case was referred to Magistrate Judge Holly B. Fitzsimmons for settlement. *See* Order, Doc. No. 16. A settlement conference was held on April 22, 2019, but that conference did not result in a settlement. *See* Min. Entry, Doc. No. 20. On August 16, 2019, Swinson filed a motion to confirm the Arbitrator's liability award. *See* Mot. to Confirm, Doc. No. 23. On September 26, 2019, I held a telephonic status conference in this case to set a briefing schedule. At that conference, I postponed setting a briefing schedule to allow limited further discovery into (1) the financial relationship between the Garrison Firm and Hayber, and (2) Swinson's medical condition. *See* Tr. of Conference, Doc. No. 34. I set the deadline for that discovery as December 31, 2019. *See id.* at 11. This order concerns disputes that have arisen during the period of limited discovery.

### III. Discussion

#### A. Discovery regarding potential conflict

##### 1. GMRI's Subpoena to the Garrison Firm – Doc. No. 28

GMRI has made a motion to enforce a subpoena it served on the Garrison Firm. *See* Mot. to Enforce, Doc. No. 28. GMRI served the Garrison Firm with that subpoena on November 1, 2019. On December 29, Garrison provided documents responsive to the subpoena. *See* Mot. to Enforce, Doc. No. 28, at ¶ 9. Garrison withheld one document that GMRI sought: a copy of the Garrison Firm's partnership fee-sharing agreement. *See id.* at ¶ 10. Garrison explained in an email to Littler that he was withholding that document because it is "highly confidential" and

"highly disproportionate to any discovery needs and is irrelevant." Email, Ex. C to Mot. to Enforce, Doc. No. 28-1, at 18; *see also* the Garrison Firm's Opp'n, Doc. No. 35. The Garrison Firm did produce "the Co-Counsel Agreement between the Hayber Law Firm and my firm, dated 9/25/14 and signed by Rob Richardon." *See id.* The Garrison Firm also produced "a final accounting that was done by our firm on January 22, 2019 that breaks down the hourly fees and time expended by Steve Fitzgerald, Joshua Goodbaum and Rob Richardson who were the only lawyers that worked on the case." *Id.* GMRI's motion to enforce seeks the Garrison Firm's partnership fee-sharing agreement. *See* Mot. to Enforce, Doc. No. 28, at ¶ 13.

The Garrison Firm's partnership fee-sharing agreement is disproportionate to the needs of this case. Garrison has already produced responsive documents indicating the professional relationship between the Garrison Firm and Hayber on the *GNC* case. The question of *how much* Garrison would eventually receive of the $187,750.00 attorneys' fees award that resulted from the professional relationship between the Garrison Firm and Hayber is not significant. Much more significant is what the relationship was between the two firms and whether/when Garrison knew of it. The Garrison Firm's partnership fee-sharing agreement is nearly irrelevant to that issue. Thus, GMRI's motion to enforce, doc. no. 28, is **denied**.

    2. GMRI's Subpoena to Hayber – Doc. No. 29

GMRI has made a motion enforce a subpoena it served on Hayber. *See* Mot. to Enforce, Doc. No. 29. GMRI served Hayber with that subpoena on November 1, 2019. On the same day, a paralegal from Hayber sent Elizabeth McKenna (an attorney at Littler) an email that said: "Attorney Hayber asked me to send you the attached documents in response to the subpoena served upon him today." *See* Email, Ex. D to Mot. to Enforce, Doc. No. 29-1, at 20. That email

contains an attachment titled "000001 – 000012.pdf." *See id.* Thus, Hayber's paralegal appears to have turned over twelve pages of responsive documents.

Elizabeth McKenna emailed Hayber to complain both that she believed that document production was not complete and also to seek clarification on the redactions made to the documents that were produced. *See* Email, Ex. C to Mot. to Enforce, Doc. No. 29-1, at 17. In particular, Elizabeth McKenna pointed out that "we have not received any correspondence outlining the initial decision to act as co-counsel, the finalization of the fee split or any general referral of business." *Id.* at 18. Hayber replied that he "produced the documents that I was able to locate after a diligent search" and that he was "not aware of any other responsive documents." *See id.* at 17.

In its motion to enforce, GMRI essentially repeats what Elizabeth McKenna said in her email. GMRI asserts that "[t]here are several key categories of documents which would be responsive to the subpoena and could easily be located via a reasonable search." Mot. to Enforce, Doc. No. 29, at ¶ 12. GMRI further explains that "[n]o correspondence regarding the creation, negotiation or execution of [the co-counsel agreement between the Garrison Firm and Hayber] have been provided," and that "information concerning the total number of hours worked by each attorney, which was used to calculate the fee distribution, would undoubtedly be readily available but has not been produced." *Id.* at ¶¶ 12–13. Hayber explains in its objection that the documents GMRI seeks simply do not exist. *See* Hayber's Obj., Doc. No. 38, at 3. Hayber further explained that the redacted material regarded "negotiation strategy with Defendant GNC – who was represented by the same defense firm [Littler] that currently represents GMRI in this action." *Id.* at 4. As a result, Hayber argues, it is not only irrelevant but might also be harmful in future negotiations between the two firms.

I agree with Hayber. Put simply, Hayber has represented that it has made a full production in response to GMRI's subpoena. I rely on that representation. *Cf.* Fed. R. Civ. P. 11(b). Hayber cannot produce documents that do not exist. *See Kuhns Brothers, Inc. v. Fushi Int'l, Inc.*, 2008 WL 11483398, at *3 (D. Conn. Mar. 7, 2008). Regarding the redactions, Hayber represents that the redacted material is simply not relevant. GMRI does not suggest that material regarding Hayber's negotiating strategy against Littler is relevant. Thus, it is not discoverable. *See Silva v. Dick's Sporting Goods, Inc.*, 2015 WL 1275840, at *2 (D. Conn. Mar. 19, 2015). For the above reasons, GMRI's motion to enforce, doc. no. 29, is **denied**.

       3. Swinson's Subpoena on Littler – Doc. No. 30

Swinson has made a motion to enforce a subpoena it served on Littler on November 27, 2019. *See* Mot. to Enforce, Doc. No. 30. That subpoena sought production of documents regarding (1) "the discovery by counsel for" GMRI that the Garrison Firm and Hayber were co-counsel in *GNC* and (2) "the timing of the communication of the knowledge that" Garrison and Hayber were co-counsel in *GNC*. Reqs. for Produc., Ex. 1 to Mot. to Enforce, Doc. No. 30-1, at 7. Swinson explains that because GMRI "claims that it would not have selected Arbitrator Garrison had it known about" the *GNC* case, "the timing as to when Littler chose to inform GMRI, Inc. that Arbitrator Garrison's firm was co-counsel with Swinson's counsel in a matter in which Littler itself was defense counsel is particularly relevant." Mot. to Enforce, Doc. No. 30, at 2.

Littler responded to the subpoena on December 11, 2019 and claimed that "Littler has no responsive non-privileged, non-work product protected documents." *See* Resps. and Objs., Doc. No. 30-2, at 3–5. Specifically, Littler claims that the attorney-client privilege and work product doctrine apply to bar Swinson's requests for documents. Further, Littler writes that "no

12

documents exist concerning the initial discovery of the undisclosed conflict" because "Elizabeth McKenna[] became aware of the conflict through an oral conversation with Littler attorney Lori Alexander and then proceeded to have an oral conversation" with GMRI. *See* Littler's Obj., Doc. No. 40, at 5. Littler did not provide a privilege log; it explains that under Local Rule of Civil Procedure 26(e) it need not.

It is plainly relevant when Littler communicated to GMRI that it knew the Garrison Firm and Hayber were co-counsel in *GNC*. Significantly, that fact is not yet clear despite Littler's representations. On September 12, 2018, GMRI asked Garrison to make supplemental disclosures regarding the professional relationship between the Garrison Firm and Hayber. *See* Compl., Doc. No. 1, at ¶ 23. However, there is no indication that Littler learned of this fact (or communicated it to GMRI) between August 17, 2018 (the date of the award) and September 12. Notably, in its opposition here, Littler explains *how* Elizabeth McKenna became aware of the potential conflict (from a conversation with Lori Alexander, another attorney at Littler), but Littler does not explain *when* Elizabeth McKenna learned that fact. I agree with Littler that the *documents* Swinson seeks in her subpoena might be privileged as communications under the attorney-client privilege and/or work product doctrine. However, the *fact* of when Elizabeth McKenna learned that the Garrison Firm and Hayber were co-counsel in *GNC* cannot be privileged under either the attorney-client privilege (which protects only communications) or the work product doctrine (which protects only documents and materials). *See Lagace v. New England Cent. Railroad*, 2007 WL 2889465, at *1 (D. Conn. Sept. 28, 2007). Thus, Littler is directed to answer the following two interrogatories:

> (1) When did Lori Alexander, or another attorney for Littler Mendelson, P.C. involved in *Williams, et al. v. General Nutrition Centers, Inc., et al*, No. 3:14-cv-1429 (VLB) ("*GNC*"), first learn that Garrison, Levin-

13

>     Epstein, Fitzgerald & Pirrotti, P.C. and Hayber, McKenna & Dinsmore, LLC were co-counsel for the plaintiffs in *GNC*.
>
> (2) When did Elizabeth McKenna, or another attorney for Littler Mendelson, P.C. involved in this arbitration, learn—from Lori Alexander or otherwise—that Garrison, Levin-Epstein, Fitzgerald & Pirrotti, P.C. and Hayber, McKenna & Dinsmore, LLC were co-counsel for the plaintiffs in *Williams, et al. v. General Nutrition Centers, Inc., et al*, No. 3:14-cv-1429 (VLB).

As a result, Swinson's motion to enforce, doc. no. 30, is **granted in part and denied in part**. It is granted to the extent that Littler must provide a response to the above interrogatories and denied as to its other requests. I agree with Littler that it need not produce a privilege log under Local Rule 26(e).

B. <u>Discovery regarding Swinson's job search and medical records</u> – Doc. No. 27

GRMI made a motion to compel responses to its first set of interrogatories and requests for production, which were sent to Swinson on November 20, 2019, and to which Swinson responded on December 20, 2019. *See* Mot. to Compel, Doc. No. 27. Specifically, GMRI sought two categories of documents: (1) those relating to Swinson's job searches from June 1, 2018 to the present, and (2) those related to Swinson's medical condition between May 1, 2018 and the present.

1. Job Search

Interrogatory 1 asks Swinson to "identify each employer or entity for whom you have worked or rendered services" from June 1, 2018 to the present. *See* Interrog. 1, Ex. A to Mot. to Compel, Doc. No. 27-3, at 2. Request for Production 3 asks Swinson to provide "[a]ll documents concerning your efforts to secure employment, including self-employment, from June 1, 2018 through the present." *See* Req. for Produc. 3, Ex. A to Mot. to Compel, Doc. No. 27-3, at 8. Swinson objected to both Interrogatory 1 and Request for Production 3 on the ground that

the requests were "overly broad as to time and scope," and were "not proportional to the underlying action in this case" because the question at issue regards Garrison's liability award. *See id.* at 3.

I agree with Swinson. Simply put, Swinson's job search efforts and employment history from June 1, 2018 to the present are not relevant to Garrison's liability award. The hearing in this case occurred between May 30 and June 1, 2018, and Garrison handed down the liability award on August 17. Neither Garrison's liability award nor his decision to deny GMRI's motion to preclude Swinson's deposition testimony turned on Swinson's job search efforts after the hearing had taken place. Swinson's job search efforts may be relevant to a subsequent damages award, but that is not what is at issue here. Thus, GMRI's motion to compel, doc. no. 27, is **denied** insofar as it seeks responses to Interrogatory 1 and Request for Production 3.

2. Medical Condition

Interrogatories 2 and 3 ask Swinson to "[i]dentify each and every healthcare provider . . . with whom you consulted or treated from May 1, 2018 to the present" and to "[i]dentify every pharmacy from which you have purchased medication" over the same time period. *See* Interrogs. 2 and 3, Ex. A to Mot. to Compel, Doc. No. 27-3, at 3–4. Request for Production 1 seeks "[a]uthorizations . . . to obtain all records concerning you from the individuals, institutions, or entities listed in response to Interrogatories 2 and 3." Req. for Produc. 1, Ex. A to Mot. to Compel., Doc. No. 27-3, at 7. Swinson objected to Interrogatories 2 and 3 and Request for Production 1 on the basis that the requests were "overly broad as to time and scope, not proportional to the underlying action in this case, and beyond what this Court ordered during the parties' September 26, 2019 status conference." *See* Resps. and Objs., Doc. No. 27-3, at 3–7. However, Swinson noted that she "has requested her medical records from May 1, 2018 up to the

15

time that the award was rendered on August 20, 2018 and will produce them upon receipt." *Id.* at 7.

Once again, I agree with Swinson. She need not produce her medical records for the period after August 20, 2018 because they are not relevant to Garrison's liability award. GMRI explains that it seeks Swinson's medical records from May 1, 2018 to present "because the proposed limitation unfairly limits [GMRI's] ability to assess key information concerning the pending Petition." Mem. in Supp. of GMRI's Mot. to Compel, Doc. No. 27-1, at 5. That concern does not regard Garrison's liability award.

Recall that on May 17, 2018, Garrison denied GMRI's request to continue Swinson's deposition based on Dr. Albert's letter of May 16, and Nurse Banevicius's letters of January 29 and May 14, 2018. When Littler renewed its objection to that ruling on June 1 (at the end of the hearing), Garrison again asserted that he made his decision because "I haven't seen any opposing doctor or, you know, nurse's opinion that Ms. Swinson was in fact available to – or medically healthy enough to give a continuing deposition during the months" between December 18 and May 18. *See* Hr'g Tr., Attach. 7 to Ex. A of Swinson's Obj., Doc. No. 36-1, at 22. Garrison left the hearing open for GMRI to submit evidence "that you were trying to take depositions on certain days and somehow actually were precluded, and that a reason was given that you say the medical records wouldn't confirm." *See id.* at 24. According to Swinson, GMRI never submitted such evidence. *See* Deborah McKenna Aff., Ex. A to Swinson's Obj., Doc. No. 36-1, at ¶ 12 ("GMRI did not make any attempts to re-open Swinson's deposition, offer evidence that contradicted the arbitrator's finding or take any steps to challenge the medical evidence in the record.").

The medical records that GMRI seeks are not relevant to Garrison's ultimate liability award, and they are not relevant to Garrison's ruling on GMRI's motion to preclude Swinson's deposition testimony for the simple reason that Garrison at no point had or saw those medical records. Thus, GMRI's motion to compel, doc. no. 27, is **denied** insofar as it seeks responses to Interrogatories 2 and 3 and Request for Production 1 at any time after August 20, 2018.

  C. <u>Response to Third-Party Subpoena</u> – Doc. No. 33

Swinson made a motion to compel GMRI to produce copies of all documents that GMRI received in response to its subpoena on the Garrison Firm. *See* Mot. to Compel, Doc. No. 33. Garrison made a production to GMRI on December 29, 2019, and Swinson's lawyers asked for a copy of that production. *See* Emails, Ex. 1 to Mot. to Compel, Doc. No. 33-1, at 2–9. Swinson explains that before a party serves a subpoena on a non-witness third party, it must serve on each party "a notice and a copy of the subpoena." Fed. R. Civ. P. 45(a)(4). There is no dispute that that happened here. Swinson also explains that the advisory committee notes to Rule 45(a) indicate that, upon request, "the party serving the subpoena should . . . make reasonable provision for prompt access" to the responsive production. Fed. R. Civ. P. 45(a) advisory committee's note to 2013 amendment. A court can order that a party be given access to those responsive productions, too. *See id.* GMRI has objected to Swinson's motion to compel and asked me to allow GMRI to "wait to provide copies of the requested documents" until I rule on GMRI's motion to enforce its subpoena directed to Hayber. *See* GMRI's Obj., Doc. No. 42, at 6. However, as explained above, GMRI's motion to enforce its subpoena directed to Hayber is denied. Thus, in light of Rule 45(a)(4)'s mandate and the advisory committee notes to that rule, I order that GMRI and/or Littler must share the response it received from its subpoena on the Garrison Firm. Thus, Swinson's motion to compel, doc. no. 33, is **granted**.

## IV. Conclusion

As set forth above, GMRI's motion to compel, doc. no. 27, is **denied**; GMRI's motion to enforce, doc. no. 28, is **denied**; GMRI's motion to enforce, doc. no. 29, is **denied**; Swinson's motion to enforce, doc. no. 30, is **granted in part and denied in part**; Swinson's motion to compel, doc. no. 33, is **granted**. And GMRI's motion to amend/correct, doc. no. 31, is **denied as moot**. The parties shall contact my chambers as soon as possible to set a briefing schedule for the merits of the motions to confirm and vacate.

So ordered.

Dated at Bridgeport, Connecticut, this 5th day of February 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge